UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-473-GWU

TINA L. CRISP,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to

1

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Tina L. Crisp, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of coronary artery disease and peripheral vascular disease.  (Tr. 19).   Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 19-23).   The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and could not be exposed to temperature extremes, excessive humidity, and pulmonary irritants.  (Tr. 368-9).   The VE responded that there were jobs that such a person could perform, and proceeded

to give the numbers in which they existed in the state and national economies.  (Tr. 370).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability initially due to heart disease (Tr. 70), but, by the time of the June 22, 2006 administrative hearing, stated that her worst problem was leg pain due to blockages in the blood vessels, which made it difficult to sit or stand for long periods.  (Tr. 353).  Stents had been placed in her right leg in January, 2006, and she expected that the left leg would also require stents.  (Tr. 353-4).  She continued to smoke, but was taking Wellbutrin to help her stop.  (Tr. 354).  In addition to being able to walk only 15 minutes, she could only sit 30 to 45 minutes without leg swelling.  (Tr. 355-6).  She described her heart problem as "aortic regurgitation," which was treated with medication.  (Tr. 358-9).  The condition caused chest pain and heart palpitations at random times, up to three times a day.  (Tr. 361-2).  Other problems included bulging disks in the lower back and numbness in the face, as well as left shoulder pain which had not been treated.  (Tr. 357, 361).

Medical evidence in the transcript reflects a large amount of testing for complaints of chest pain, including a normal echocardiogram, stress thallium and exercise treadmill test in May, 2004 (Tr. 174-9), another normal treadmill exercise

and stress thallium test in March, 2005 (Tr. 171-2), and a cardiac catheterization in September, 2005 showing normal coronary arteries, normal left ventricular function and "mild" aortic insufficiency (Tr. 223-4, 247-8).  One of her treating cardiologists, Dr. A. Anand, reported in April, 2006 that the plaintiff's chest pain was non-cardiac and reassured her that her workup results were essentially normal.  (Tr. 262).  This is consistent with many office notes from Dr. Anand and his colleagues stating that she was stable from a cardiac standpoint and doing well.  (E.g., Tr. 151, 157, 168, 216, 260).  Dr. Anand did write a note on his prescription pad dated October 31, 2005 stating that the plaintiff was under "great psychological strain and has aortic insuffiency," became short of breath with exertion, and was "disabled."  (Tr. 214).  However, the indication of disability, in addition to being a vocational conclusion outside a physician's area of expertise, is clearly contradicted by the office notes and normal test results.   Therefore, substantial evidence supports the ALJ's determination that the opinion was not entitled to controlling weight.  (Tr. 18).  The ALJ's determination was also supported by state agency physicians who reviewed a portion of the record and concluded that the plaintiff did not even have a "severe" impairment as of May, 2005.  (Tr. 210-11).

By December, 2005, a duplex arterial sonogram indicated marked stenosis in the left leg and a slightly decreased flow in the right leg.  (Tr. 219-20).  The plaintiff was hospitalized in January with a diagnosis of peripheral vascular disease with

claudication, and further testing showed a "critical" stenosis of the right leg.  (Tr. 225-6).  Stents were placed, reducing the stenosis to zero.  (Tr. 226).  Although the plaintiff had some difficulty with an infection, this was apparently successfully treated with antibiotics.  (Tr. 296).  She was discharged from the hospital with instructions that she could perform "activity as tolerated."  (Tr. 296).  Her family physician, Dr. James Shoptaw, urged her to stop smoking, and had a CT angiogram performed in April, 2006 because of complaints of severe leg pain, but the testing was basically unremarkable.  (Tr. 317-20).  Dr. Shoptaw referred his patient to a neurologist, Dr. Alam Kahn, for further evaluation of this problem.   (Tr. 320).   Although his examination was normal, Dr. Kahn obtained an MRI of the lumbosacral spine showing an "mild" bulge at L5-S1.  (Tr. 298-301).  An arterial Doppler study showed significant left peripheral vascular disease.  (Tr. 302).  Dr. Kahn's examination was normal and he emphasized the importance of smoking cessation and prescribed the medication Wellbutrin to aid in this.   (Tr. 303).   No functional restrictions are suggested.

Dr. Anand wrote another prescription pad note on April 17, 2006 stating that he was treating the plaintiff for coronary and peripheral artery disease, and she was advised to rest and "desist further stressful episodes."  (Tr. 238).  As previously noted, the plaintiff's cardiac workup showed few abnormalities, and following the stent placement, objective testing did not show a restriction in blood flow that would

support complaints of severe pain.  The ALJ added that the plaintiff was continuing to smoke against medical advice.  (Tr. 20).  The ALJ also noted that there was no evidence of treatment for back or shoulder pain, and, although the MRI of the lumbosacral spine showed a mild bulging disk, this was not equated to any functional impairment.  The plaintiff was not taking any prescription pain medications, could go shopping, play with her grandchildren, and attend church regularly.  (Tr. 363-5).  She also indicated at one point that her daily activities included vacuuming, dusting, doing laundry and dishes, and mopping.  (Tr. 105).  Accordingly, there is substantial evidence to support a finding that the plaintiff's shoulder and back pains were not "severe" under the Commissioner's regulations.  The plaintiff did require medication for gastritis and a small hiatal hernia (Tr. 135-6), but did not prove that this condition would cause any limitation on her ability to work.

The plaintiff makes two arguments on appeal.  First, she notes the VE's testimony that there would be no jobs she could perform if chest pain interrupted her ability to work three to four times a day.  (Tr. 370).  The ALJ did not find the allegation of frequent chest pain to be credible, however, and was not required to accept the VE's answer under such circumstances.  More significantly, the plaintiff points to a functional capacity assessment completed by Dr. Anand which would restrict her to less than full-time work due to peripheral vascular disease and aortic regurgitation.  (Tr. 336-9).  However, this report was submitted to the Appeals

06-473 Crisp

Council after the ALJ had rendered his decision. The Appeals Council concluded that the new evidence did not provide a basis for changing the ALJ's decision. (Tr. 6-8). While new evidence can be a basis for remanding a case for further administrative proceedings, the claimant must show that the evidence is both new and material and that there was "good cause" for failing to present it at the prior proceeding. 42 U.S.C. Section 405(g). While the new evidence may be new, it is of questionable materiality for the same reasons that Dr. Anand's previous opinions were discounted, i.e., the lack of objective supporting evidence. Moreover, the plaintiff has not advanced any "good cause" for failing to obtain the evidence in time for it to be considered by the ALJ.[1]

The decision will be affirmed.

This the 22nd day of August, 2007.



**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**

_____

[1]While the court recognizes that the plaintiff had discharged her representative prior to the administrative hearing (Tr. 24), electing to proceed at the administrative hearing on her own (Tr. 342-4), and did not retain her present counsel until after the ALJ's decision (Tr. 10), it is still the plaintiff's responsibility to prove her own case, and a claimant may elect to proceed without representation.